# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

JOHN A. GEIGER,

Plaintiff,

-vs-

ALSTOM SIGNALING INC. AND THE HARTFORD
LIFE INSURANCE COMPANY,

Defendants.

DECISION and
ORDER
06-CV-6561-CJS

---

## APPEARANCES

For Plaintiff:                     Christopher DiPasquale, Esq.
                                   Harris Beach LLP
                                   99 Garnsey Road
                                   Pittsford, NY 14534

For Defendant ALSTOM:              Carey Ann Denefrio, Esq.
                                   Thomas E. Reidy, Esq.
                                   Ward Greenberg Heller & Reidy LLP
                                   300 State Street
                                   6th Floor
                                   Rochester , NY 14614

For Defendant Hartford:            R. Scott DeLuca, Esq.
                                   Schrader, Israely, DeLuca & Waters LLP
                                   2821 Wehrle Drive, Suite 3
                                   Williamsville, NY 14221

## INTRODUCTION

**Siragusa, J.** This Employee Retirement Income Security Act ("ERISA") case is

before the Court on the following motions:

| #  | Type of Motion | Date | Moving Party |
|----|----------------|------|--------------|
| 55 | For Summary Judgment | 09/14/2007 | ALSTOM Signaling Inc. |
| 72 | For Summary Judgment Motion | 08/07/2009 | The Hartford Life Insurance Company |
| 78 | Cross-Motion for Summary Judgment | 11/18/2009 | Plaintiff |
| 84 | Motion *in limine* | 01/08/2010 | The Hartford Life Insurance Company |

Plaintiff originally commenced this action *pro se*, but retained counsel on June 21, 2007. Following a conference with the Court on July 16, 2007, Plaintiff's counsel indicated that he would file an amended complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a). He did, and Hartford answered the amended complaint on September 14, 2007 (Docket No. 54). On the same day, ALSTOM Signaling, Inc. ("ALSTOM") filed a motion for summary judgment (Docket No. 55). The Court heard argument on the motion and, subsequently, The Hartford Life Insurance Company ("Hartford") filed it's motion for summary judgment, followed by Plaintiff's cross-motion and Hartford's motion *in limine*. After reviewing the papers filed in support of and in opposition to the pending motions and having heard oral argument on the applications, for the reasons stated below, the Court grants in part and denies in part ALSTOM's motion [#55] and grants Hartford's motions [#72 and #84]. Plaintiff's cross-motion [#78] is denied.

## BACKGROUND

The amended complaint contains two causes of action alleging breaches of contract and violations of ERISA. Plaintiff claims as a first cause of action that Hartford breached

its obligations under the long term disability ("LTD") benefit option policy ("Policy") of ALSTOM as well as ERISA and that he is entitled to enforce the allegedly-breached provisions. As a second cause of action, Plaintiff claims that ALSTOM is in violation of ERISA, or, in the alternative, in breach of contract.

All parties have filed statements of fact pursuant to the local rule. The following facts are not in dispute, except where indicated. Plaintiff is a former employee of ALSTOM and was enrolled in a group benefit plan known as the Group Long Term Disability, Life, Supplemental Life, Accidental Death and Dismemberment and Supplemental Dependent Life Plan ("Plan"). (Giuliano Aff. (Sept. 14, 2007) ¶ 2.) ALSTOM was named as Sponsor and Administrator of the Plan. (Ex. 1, ALSTOM's Appendix at 43.) Defendant Hartford issued a Group Insurance Policy in connection with the Plan. (Giuliano Aff. ¶ 2; Appendix Ex. 1 at 2.) Plaintiff was insured under the Plan, and received a copy of the Plan's Summary Plan Description ("SPD"). (Giuliano Aff. ¶ 2.) On April 8, 2003, ALSTOM notified plaintiff that his employment would be terminated effective April 22, 2003. (Giuliano Aff. ¶ 3.) Plaintiff was not required to work for the remainder of the day on April 8, 2003, or thereafter. (Giuliano Aff. ¶ 3.) On April 8, 2003, plaintiff left ALSTOM's premises and never returned to work. (Giuliano Aff. ¶ 3.) Plaintiff remained on ALSTOM's payroll until April 22, 2003. (Giuliano Aff. ¶ 3.)

On April 8, 2003, during the termination notification meeting, after being advised of his termination, plaintiff stated that he was disabled. (Giuliano Aff. ¶ 4.)[1] ALSTOM claims

---

[1]In his statement of facts, Plaintiff further states that he was diagnosed with osteoporosis on March 5, 2002, and was advised by his orthopedic surgeon to stop working in November 2002. (Geiger Aff. ¶¶ 8 & 10.)

that its Flexible Benefits Program ("Bene-Flex Program") is not applicable to terminated or laid-off employees, as the "Eligibility and Participation" section of the summary description of the Bene-Flex Program states that ALSTOM's Bene-Flex Program is only applicable to regular full-time salaried employees. (Giuliano Aff. ¶ 7; Appendix Ex. 4 at 3-4.) Plaintiff, however, disputes his eligibility for ALSTOM's Flexible Benefits Program. He contends that he was a full-time salaried employee as of April 8, 2003, when he qualified for long term disability benefits ("LTD benefits") under the Group Long Term Disability, Life, Supplemental Life, Accidental Death and Dismemberment and Supplemental Dependent Life Plan for employees of ALSTOM (the "Plan"). He further states that when his application for benefits was approved, it was approved retroactive to the date of the application. As such, Plaintiff argues that he is entitled to medical and dental insurance benefits during the period of his disability. (Geiger Aff. ¶¶ 15-16.)

Because the events of April 8, 2003, are central to the issues, the Court will set out the parties' contentions from their affidavits. First, Joanne Giuliano ("Giuliano"), the Benefits Manager for ALSTOM, described the events of April 8 as follows:

> 3. On April 8, 2003, ALSTOM notified plaintiff that termination of his employment would be effective on April 22, 2003. Plaintiff was not required to work for the remainder of the day on or after April 8, 2003, even though he continued on the payroll until April 22, 2003. In fact, on April 8, 2003, plaintiff left ALSTOM's premises and never again returned.
>
> 4. On April 8, 2003, during plaintiffs abovementioned termination notification meeting and after ALSTOM advised plaintiff that he was being laid off, plaintiff stated that he was disabled. This was the first time plaintiff told ALSTOM that he was unable to work because of his disability.

(Giuliano Aff. ¶¶ 3–4.) In his affidavit, Plaintiff describes the events as follows:

> 11. On April 8, 2003, Alstom informed me that my employment would be terminated effective April 22, 2003.

12. On April 8, 2003, I informed Alstom that I was disabled and I subsequently submitted my application for disability benefits under the Policy.

13. On August 3, 2004, my application was approved and benefits were awarded retroactive to October 6, 2003, which was the first day following the Policy's 180-day elimination period based on a disability date of April 8, 2003.

14. Since April 8, 2003, I have been continuously disabled and remain entitled to benefits under the Policy.

(Geiger Aff. (Docket No. 64) ¶¶ 11–14.)

The Bene-Flex Program's summary description states that "Participation in Bene-Flex ends on the day you are no longer an eligible employee." (Appendix Ex. 4, at 3-4.) Accordingly, ALSTOM maintains that as of April 23, 2003, ALSTOM's Bene-Flex Program no longer applied to Plaintiff because he was no longer a regular, active salaried employee. (Giuliano Aff. ¶ 8 .) Plaintiff counters, though, that his disability date for the purpose of receiving LTD benefits was April 8, 2003, the commencement of the 180-day elimination period. He further contends that when he became disabled on April 8, 2003, he was a full-time employee who was eligible to participate in the Plan and that if he had become disabled after his termination date (*i.e.*, April 22, 2003), when he was no longer a "participant" of the Plan, only then he would have been ineligible to receive LTD benefits. (Docket No. 64-2.)

Medical, dental and life insurance coverage continuation is a benefit available for ALSTOM employees who are terminated for reasons other than cause. There are different benefit continuation packages depending on the reason for the employee's termination. (Giuliano Aff. ¶ 9.) A "layoff' benefits continuation package is provided to employees who have been laid off. (Giuliano Aff. ¶ 9.) Under the layoff benefits continuation package, an

employee will automatically receive ALSTOM's basic severance package. The employee can also opt to receive an enhanced severance package which includes an additional six months of continued medical and dental insurance coverage. (Appendix Ex. 5.) In order for an employee to receive the enhanced package, the employee must execute a separation agreement and release of claims. (Giuliano Aff. ¶ 11; Appendix Ex. 5.)

Both Plaintiff and ALSTOM agree that he was terminated as part of a layoff. However, Plaintiff contends he qualified for benefits under the Plan when he became disabled, since he was still a full-time salaried employee. For this reason, Plaintiff argues that ALSTOM's layoff benefits continuation package is not applicable to him. (Geiger Aff. ¶ 17.) ALSTOM, though, contends Plaintiff never executed the separation agreement and release of claims, and consequently, was only entitled to receive the basic severance package benefits. Plaintiff, however, argues that he was not required to execute a separation agreement to receive the benefits, because he automatically became eligible for coverage (including ALSTOM-paid medical and dental insurance benefits) for as long as he remained disabled. (Geiger Aff. ¶¶ 18–21.)

ALSTOM is obligated to follow the Internal Revenue Service's ("IRS") guidelines with respect to calculating the taxable portion of an employee's LTD benefits, specifically IRS Publication 15-A Section 6,. (Giuliano Aff. ¶ 17.) An employee's LTD benefits are taxed based on the portion of the premium he paid, in ratio to the portion of the premium paid by the employer. (Giuliano Aff. ¶ 14.) Plaintiff does not dispute ALSTOM's interpretation of IRS Publication 15-A, but argues that ALSTOM breached its duty to him as a Plan participant by failing to comply with its own disclosures, thereby damaging Plaintiff by reducing the net benefit he would have expected

to receive. (Geiger Aff. ¶ 23.) Plaintiff also does not dispute that in 2003, ALSTOM calculated the taxable percentage for Plaintiff's LTD benefits based on the last three years of employer/employee contributions towards the LTD premiums. Instead, Plaintiff claims that by unilaterally contributing a greater percentage of the premium payments, without any notice to plaintiff, ALSTOM effectively and improperly reduced his benefits. (Geiger Aff. ¶ 24.)

ALSTOM does not challenge the fact that it communicated to Plan participants that "52% of the benefit, representing the company paid portion, would be taxable." (Giuliano Aff. ¶ 17.) ALSTOM, however, characterizes the description in the Plan as a "blanket statement" which "is not correct, as individual circumstances will vary and a specific calculation must be made for each individual." (Giuliano Aff. ¶ 17.) Further, ALSTOM contends that for the 2000-2002 "look back"[2] period, the taxable portion of plaintiff's LTD benefit payments is 61%. (Giuliano Aff. ¶ 16; Appendix Ex. 7.) Plaintiff does not dispute the fact that the calculation of the taxable portion of his LTD benefits was not subject to ALSTOM's discretion, but rather that ALSTOM was obligated to disclose accurate information and is legally responsible for its failure to do so. (Geiger Aff. ¶ 17.)

ALSTOM cites to the following provision in the summary of its Bene-Flex Program:

> Nothing contained in this Planner Kit should be construed as a promise, guarantee or commitment by ALSTOM Signaling Inc. of continued employment, the continuance of the Bene-Flex Flexible Benefits Program, its component benefit plans, or other benefit plans. ALSTOM Signaling Inc. reserves the right to modify, suspend, or end any benefit plan or arrangement at any

---

[2]IRS Publication 15-A states that, under a group policy, if both the employer and the employee contribute to the premium for the policy, then the taxable sick pay is to be calculated "by multiplying it by the percentage of the policy's cost that was contributed by the employer for the 3 policy years before the calendar year in which the sick pay is paid." (Appendix Ex. 6, at 15.)

time should this become necessary or appropriate at the company's discretion.

(Flexible Benefits Program, Giuliano Aff. Ex. 4 at 6.) ALSTOM argues from this provision that the summary description of ALSTOM's Bene-Flex Program does not constitute a promise or a contract. (Giuliano Aff. ¶ 18; Appendix Ex. 4, at six.) Plaintiff responds that neither his status with ALSTOM at the time he applied for LTD benefits is in dispute, nor is his eligibility for benefits under the Plan, and that nowhere in the pertinent Plan documents does ALSTOM reserve the right to reduce benefits after an application has been submitted and approved based on information previously disclosed. He further argues that any such right, if reserved, would constitute an abuse of discretion by the Plan fiduciary. (Geiger Aff. ¶ 28.)

Finally, ALSTOM contends that under its "Separation Pay Play [sic], severance benefits are calculated based on the employee's annualized base salary" and that Annual Earnings is defined as "the annualized base salary of the employee at the time of separation, without regard to overtime, bonus, incentive payments or commission payments." (Giuliano Aff. ¶ 19; Appendix Ex. 9, §§ 4.4, 4.1, 4.2.) ALSTOM further states that Items such as lump sum bonus payments, merit-based payments, fringe benefits and perks are properly excluded when calculating severance benefits. (Giuliano Aff ¶ 21; Appendix Ex. 9 §§ 4.2, 4.4.) In that regard, ALSTOM asserts that Plaintiff's 2002 lump sum payment was a one-time bonus and was not part of his base salary, or "standard compensation," or that the lump sum payment given to Plaintiff in lieu of an annual increase in salary, or given to him in lieu of an annual increase in salary, contrary to what Plaintiff has alleged in his amended complaint. (Giuliano Aff. ¶ 20.) Plaintiff, however,

argues that by characterizing his 2002 lump sum payment as a bonus, ALSTOM has attempted to reduce the severance benefits, to which it acknowledges Plaintiff was entitled to receive, pursuant to the company's Separation Pay Plan. Plaintiff further argues that ALSTOM does not produce any documentation which defines the lump sum payment as a bonus or otherwise excludes it from the calculation of "the annualized base salary of the employee at the time of separation." In addition, citing to ALSTOM's letter dated December 19, 2003, Plaintiff contends that this payment was specifically described as a "lump sum," and not a bonus. (Plaintiff's Exhibit 3.) Plaintiff also disputes ALSTOM's assertion that fringe benefits and perks were excluded when calculating severance benefits and contends that no documentary support for this position has been provided. (Geiger Aff. ¶¶ 29-31.)

## STANDARDS OF LAW

### *Summary Judgment*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893

(3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. FED. R.

Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

### ERISA Standard of Review

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court was called upon to determine the standard of review to be employed in ERISA cases where a beneficiary challenged a decision of a plan administrator. After an extensive review of the statue, analogizing to the law governing trusts, the Court held that,

> [c]onsistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Firestone*, 489 U.S. at 115. The Second Circuit, in *Pagan v. NYNEX Pension* Plan, 52 F.3d 438 (2d Cir. 1995), following *Firestone* held that "where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Id.* at 441.

> Even if a plan administrator is given discretion, the Court of Appeals for the Second Circuit has applied the *de novo* standard of judicial review if the administrator was "in fact" influenced by a conflict of interest. *Fay v. Oxford Health Plan*, 287 F.3d 96, 108-09 (2d Cir. 2002) (citation and internal quotations marks omitted). A conflict "may be 'inherent' to some extent when a plan is both administered and insured by a single entity," but the *de novo* standard is only applicable if there is an actual conflict of interest. *Id.* at 109.

*Mood v. Prudential Ins. Co. of America*, 379 F. Supp. 2d 267, 274 (E.D.N.Y. 2005).

**ANALYSIS**

***ALSTOM'S Motion***

ALSTOM seeks dismissal of the second cause of action in Plaintiff's amended complaint. In the summary of its argument, ALSTOM states,

> In the second cause of action, plaintiff alleges that ALSTOM improperly denied him medical and dental insurance benefits, improperly paid a higher portion of the long term disability ("LTD") benefits premium than it should have and improperly calculated his severance benefits. However, ALSTOM did not improperly calculate or fail to provide plaintiff with the benefits to which he was entitled. Regardless, ALSTOM did not act arbitrarily or capriciously in its handling of plaintiffs benefits. Accordingly, this Court should dismiss plaintiffs Amended Complaint in its entirety as to ALSTOM.

(ALSTOM Mem. of Law (Docket No. 59) at 1.) In opposition to ALSTOM's motion, Plaintiff argues the following points:

> ALSTOM has not established that it had discretionary authority to determine eligibility for benefits or to interpret the terms of the plan.

> ALSTOM has breached its contractual obligations to Mr. Geiger because it refuses to provide him with the continued medical and dental insurance benefits to which he is entitled.

> As plan administrator, ALSTOM breached its fiduciary obligations to Mr. Geiger because it failed to notify him that it began paying a higher percentage of the policy premium.

> ALSTOM did not properly calculate Mr. Geiger's separation benefits because it failed to include a lump sum payment and fringe benefits.

(Pl.'s Mem. of Law (Docket No. 65) 3, 4, 5 & 7.)

***ALSTOM Has Full Discretion to Interpret the Terms of the Group Benefit Plan, Long Term Disability, Life, Supplemental Life, Accidental Death and Dismemberment and Supplemental Dependent Life***

Here, the Court is presented not with the Plan itself, but only the Summary Plan Description ("SPD"). In it, ALSTOM is listed as the plan administrator. With regard to whether the plan administrator can exercise discretion under the plan, the SPD states in

pertinent part the following:

> Who interprets policy terms and conditions?
>
> We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms-and provisions of the Group Insurance Policy.

(Summary Plan Description 15.) In his memorandum of law opposing summary judgment, Plaintiff merely states, "ALSTOM has failed to establish that the plan documents gave it discretionary authority to determine eligibility for benefits or to interpret the plan." (Pl.'s Mem. of Law 3.) If this is a reference to the fact that ALSTOM failed to provide the Court with the Plan itself, this is an insufficient basis for not applying the more deferential standard. The Southern District of New York was confronted with this exact issue in *Wojciechowski v. Metropolitan Life Ins. Co.*, 75 F. Supp. 2d 256 (S.D.N.Y. 1999). In that case, District Judge Barrington D. Parker wrote that,

> Plaintiff contests the assertion that Met Life has discretionary authority to administer the plan because defendants have furnished only a Summary Plan Description ("SPD") of the LTD plan rather than the formal IBM LTD plan, with governmental approval. However, plaintiff cites no authority stating that this is grounds for not applying the arbitrary and capricious standard of review. Furthermore, our Circuit has validated the use of a SPD as the vehicle through which an employer is to provide necessary plan information to its employees. *See American Federation of Grain Millers, AFL-CIO*, 116 F.3d 976, 982 (2d Cir.1997).

*Wojciechowski*, 75 F. Supp. 2d at 262. Thus, this Court determines ALSTOM has proved that the Plan administrator had discretionary authority to interpret the Plan. Therefore, the Court will apply the "arbitrary and capricious" standard of review. With regard to that standard, the Second Circuit ruled in *Pagen* that,

> [u]nder the arbitrary and capricious standard of review, we may overturn a decision to deny benefits only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v.*

> *Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (quotation omitted); *see also Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 285 (1974) ("A reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.") (quotation omitted). This scope of review is narrow, thus we are not free to substitute our own judgment for that of the NYNEX Committee as if we were considering the issue of eligibility anew. *See Bowman*, 419 U.S. at 285; *Jordan*, 46 F.3d at 1271 ("The court may not upset a reasonable interpretation by the administrator.") (citations omitted).

*Pagan*, 52 F.3d at 442.

### *Plaintiff Has Not Demonstrated That ALSTOM's Plan Administrator Operated under a Conflict of Interest*

Plaintiff also contends that ALSTOM was operating under a conflict of interest when it made decisions impacting on his benefits, citing to the following language in *Firestone*:

> Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion." Restatement (Second) of Trusts § 187, Comment *d* (1959).

*Firestone*, 489 U.S. at 115. Other than making a conclusory statement in his memorandum of law, Plaintiff does not further demonstrate that ALSTOM's plan administrator was operating under a conflict of interest. The Second Circuit clearly held in *Locher v. UNUM Life Ins. Co of Am.*, 389 F.3d 288, 294 (2d Cir. 2004) that there is no *per se* rule: "a conflict of interest does not *per se* constitute 'good cause' to consider evidence outside of the administrative record upon a de novo review of factual issues bearing on an administrator's denial of ERISA benefits." The Court of Appeals also recognized that, "claims reviewers and payors are almost always either the same entity or financially connected in some other way." *Id*. at 295. The Court of Appeals further stated:

> We have also found that "good cause" for consulting evidence outside the
> administrative record existed where an insurer's claimed reason for denying
> a claim was not stated in its notices to the claimant, *Juliano v. Health Maint.*
> *Org. of New Jersey, Inc.*, 221 F.3d 279, 289 (2d Cir. 2000), but did not exist
> where an insurer gave the claimant 'ample time to submit additional
> materials' and had already discussed the claimant's case with the two
> treating physicians whose testimony was to be introduced, *Muller v. First*
> *Unum Life Ins. Co.*, 341 F.3d 119, 125-26 (2d Cir. 2003).

*Locher*, 389 F.3d at 295. Plaintiff does not provide evidentiary proof in admissible form that

the reasons given by ALSTOM for denying his claims are unsupported in the

administrative record. Accordingly, the Court finds no reason not to apply the more

deferential standard of review to ALSTOM's decisions on Plaintiff's claims.

### ALSTOM Is Not Entitled to Summary Judgment on Plaintiff's Breach of Fiduciary Duty Claim

Plaintiff claims that ALSTOM breached its fiduciary obligations to him because it

failed to notify him that it began paying a higher percentage of the policy premium, thus

negatively affecting Plaintiff's taxes. ERISA requires that a summary plan description,

> shall be written in a manner calculated to be understood by the average plan
> participant, and shall be sufficiently accurate and comprehensive to
> reasonably apprise such participants and beneficiaries of their rights and
> obligations under the plan.

29 U.S.C. § 1022(a) (1997). Subsection (b) of § 1022 describes the information required

to be in the summary plan description, but does not include information about how the

premiums are to be paid. Nevertheless, the "sufficiently accurate" requirement in

subdivision (a) applies to the situation here, where ALSTOM unilaterally changed the

premium payments (to the benefit of most employees, they claim), but did not inform

Plaintiff of the change so he could react to protect his own interests. Accordingly, the Court

determines that ALSTOM has not shown that it is entitled to summary judgment on this point. *See Layaou v. Xerox Corp.*, 238 F.3d 205, 210 (2d Cir. 2001).

### ALSTOM's Is Not Entitled to Summary Judgment on the Breach of Contract Cause of Action

Plaintiff claims that by refusing to provide him with continued medical and dental insurance benefits, ALSTOM has breached its contractual obligation. He further claims that "[t]here is no dispute that Mr. Geiger is, in fact, eligible for benefits under the Policy." (Pl.'s Mem. of Law at 4.) ALSTOM directly contradicts Plaintiff's assertion. In fact, ALSTOM makes the contrary assertion, "the parties agree that plaintiff's status as a laid off employee pre-dated the notice provide to ALSTOM about his disability." (ALSTOM Reply Mem. of Law at 5.) Even applying the arbitrary and capricious standard, the Court concludes that Plaintiff has raised a material question of fact precluding summary judgment.

With regard to ALSTOM's decision not to provide Plaintiff with medical and dental insurance, the parties refer to what is called the Bene-Flex program. That program is described in a document entitled "Flexible Benefits Program, Comprehensive choices for a personalized benefits package," and opens with the following sentence: "ALSTOM Signaling Inc. Is proud to offer salaried employees our flexible benefits program ... ***Bene-Flex***." (Giuliano Aff. Ex. 4 (Docket No. 58) 1.) Under "Eligibility and Participation,*"* it states, "[a]ll full-time salaried employees are eligible for Bene-Flex." (*Id*. 3.) The same section contains this language, "Participation in Bene-Flex ends on the day you are no longer an eligible employee. Some coverage options, however, may continue beyond this date. You will receive more information on the continuation of these coverage options when you are no longer eligible to participate in Bene-Flex." (*Id*. 4.)

Giuliano states in her affidavit that, "ALSTOM's Flexible Benefits Program is only applicable to regular full-time salaried employees. ALSTOM's Flexible Benefits Program does not apply to terminated or laid-off employees." (Giuliano Aff. ¶ 7.) Plaintiff counters that, "[u]pon qualifying for LTD benefits, I automatically became entitled to coverage for Alstom-paid medical and dental insurance benefits for as long as I remained disabled." (*See* Alstom's Appendix to Local Rule 56.1 Statement of Material Facts Not in Dispute, Exhibit 8.) (Geiger Aff. (Docket No. 64) ¶ 16.) Exhibit 8 is the Bene-Flex description of "Company Paid Employee LTD Insurance." On page four of that document is this language: "Currently under ALSTOM Signaling Inc. rules (subject to change at any time by ALSTOM) medical, dental, and life insurance continues as long as you qualify for LTD." (Giuliano Aff. Ex. 8 (Docket No. 58) 4.) In addition, the Plan states that, "All LTD benefits are offset by other payments you and/or your dependents are eligible to receive for the same disability from other sources, such as Workers' Compensation, Social Security or Retirement Plan benefits." (Bene-Flex (Giuliano Aff. Ex. 8) 2.)

ALSTOM's argument is that the moment it informed Plaintiff he would be laid off, his status changed from a full-time employee, to laid-off employee, notwithstanding that on the same day, he informed ALSTOM of his disability and applied for and received disability benefits under the Plan. ALSTOM's proof of this change of status is contained in its Benefits Manager's affidavit: "On April 8, 2003, *as soon as* ALSTOM notified plaintiff that his employment was terminated due to layoff effective April 22, 2003, plaintiff's status was that of a laid off employee." (Giuliano Aff. (Oct 19, 2007) ¶ 2 (emphasis added).)

ALSTOM's contention is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya*, 2 F.3d at 45. ALSTOM's interpretation ignores

the word "effective" as in "effective April 22, 2003." Thus, the Court determines that ALSTOM has failed to show its entitlement to summary judgment on this point.[3]

### *ALSTOM's Calculation of Benefit under the Separation Pay Plan Is Accurate and ALSTOM Is Entitled to Summary Judgment on this Claim*

Plaintiff contends that ALSTOM's "failure to include the Lump Sum Payment and fringe benefits in its calculation of [Plaintiff's] separation plan payment constitutes a breach of [ALSTOM's] fiduciary duty and contractual obligations…." (Pl.'s Mem. of Law (Docket No. 65) 7.) He further argues that ALSTOM has not produced any documentation defining lump sum payment as a bonus or otherwise excluding it from the calculation of "the annualized base salary of the employee at the time of separation." Further, citing to ALSTOM's letter dated December 19, 2003, Plaintiff contends that this payment was specifically described as a lump sum, and not a bonus. (Pl.'s Ex. 3.) Plaintiff also disputes ALSTOM's assertion that  fringe benefits and perks were excluded when calculating severance benefits and contends that no documentary support for this position has been provided. (Geiger Aff. ¶¶ 29-31.)

This issue involves the Separation Pay Plan, a copy of which is attached as Exhibit 9 to ALSTOM's appendix of exhibits (Docket No. 58). ALSTOM's memorandum of law assumes, without actually showing, that the Separation Pay Plan is governed by ERISA and argues for the application of the arbitrary and capricious standard. (ALSTOM Mem. of Law (Docket No. 59) 9.) Neither party actually addresses the question of whether the Separation Pay Plan  is governed by ERISA.

---

[3]Plaintiff's cross-motion seeks judgment against Hartford, not ALSTOM.

The definition of the type of plan covered by ERISA is as follows:

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,

(A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or

(B) any benefit described in section 186 (c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1001(1). If the Separation Pay Plan is not governed by ERISA, then Plaintiff's cause of action is for breach of contract.

The Separation Pay Plan assigns to "Human Resources" the responsibility for "assisting line management in the consistent implementation of this policy" and states further that "[e]xceptions to this policy require the prior review and approval fo the Senior Vice President and Chief Human Resources Officer, ALSTOM US." (ALSTOM Ex. 9 (Docket No. 58) ¶ 5.) Under the *Firestone* standard, the Court determines that if ERISA governs the Separation Pay Plan, the terms of the plan do not give "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. Accordingly, the Court will review ALSTOM's determination under the Separation Pay Plan *de novo*.

The Separation Pay Plan calculated the benefit due to Plaintiff based on his annual earnings, which it defines as: "Annual Earnings: means the annualized base salary of the employee at the time of separation, without regard to overtime, bonus, incentive payments

or commission payments." (Separation Pay Plan (ALSTOM Ex. 9) ¶ 4.2.) Plaintiff argues

that the 2002 lump sum payment he received, which he describes as in lieu of a raise in

compensation, should have been included in ALSTOM's calculation of his annual earnings.

Plaintiff's Earnings Statement for December 20, 2002, shows a payment described as

"Lump Sum." (Geiger Aff. (Docket No. 64) Ex. 1.) ALSTOM, however, in its memorandum

of law, describes the payment as a "lump sum bonus payment." (ALSTOM Mem. of Law

(Docket No. 59) 9.) Giuliano, the Benefits Manager for ALSTOM, states in her affidavit that,

"Plaintiff's 2002 lump sum payment was a bonus. It was not standard compensation, nor

was it given to plaintiff in lieu of an annual increase in salary, as alleged in the amended

complaint." (Giuliano Aff. (Docket No. 57) ¶ 20.) In opposition, Plaintiff states that:

> The amount of the lump sum payment, $1,940.72, was not consistent with
> a bonus which is typically an even amount, either in terms of dollars or
> percentage. This payment amounted to approximately 2.9% of my salary. I
> was never told it was a bonus and it was never characterized as such in any
> documentation I received from Alstom. Nor was it overtime compensation,
> an incentive payment or a commission payment. Because the lump sum was
> not one of the specific items excluded from the calculation of annual
> earnings, it must, by definition, be incorporated in the calculation.

(Geiger Aff. (Docket No. 64) ¶ 30.) In addition, Plaintiff contends that, "[s]imilarly, fringe

benefits were part of my annual earnings and, in the absence of any specific exclusion of

those benefits, must be included in the calculation of my annual earnings for the purpose

of establishing my severance benefits." (*Id*. ¶ 31.)

In interpreting the annual earnings definition *de novo*, the Court determines that

regardless of how the lump sum payment is characterized, the plain language of the

definition makes clear that the separation pay calculation is based only on the ordinary

salary Plaintiff received, annualized. Therefore, the Court finds that Plaintiff has failed to

show that the lump sum payment was part of his base salary, nor has he raised a material issue of fact concerning whether the lump sum should have been included in the calculation. Further, Plaintiff has failed to raise a material issue of fact as to whether fringe benefits ought to be included in his base salary, and the Court determines fringe benefits should not be included. Accordingly, on the issue of whether ALSTOM correctly calculated Plaintiff's Separation Pay benefit, the Court grants ALSTOM's motion for summary judgment.

**Hartford's Motion in Limine**

Hartford has moved to omit consideration of any information outside of its administrative record and has cited this Court's prior decisions on point.[4] *Kindig v. Anthem Life Ins. Co.*, No. 07-CV-6282 CJS, 2009 U.S. Dist. LEXIS 27419, *17 (W.D.N.Y. Mar. 30, 2009) ("In conducting a review using the arbitrary and capricious standard, the Court is limited to the record that was before the plan administrator."); *Leccese v. Metro. Life Ins. Co.*, No. 05-CV-6345-CJS, 2007 U.S. Dist. LEXIS 27194, *15 (W.D.N.Y. Apr. 12, 2007) ("since the parties agree that the standard of review in this case is 'arbitrary and capricious,' the Court is limited to a review of the record as it existed before the plan administrator."). Hartford concedes that the administrative record includes the letter Plaintiff sent to Hartford dated August 8, 2006, and Hartford's October 9, 2006, letter in response. (Hartford Reply Mem. of Law (Docket No. 92) 3.)

---

[4]Prior to oral argument on Hartford's motion, ALSTOM's counsel indicated his desire to join this motion *in limine*. Since the Court was able to decide ALSTOM's motion without resort to evidence sought to be excluded, it does not address ALSTOM's request to join in the motion *in limine*.

Included in Plaintiff's papers are the following documents which Hartford contends are not part of the administrative record and should not be considered (all are attached as exhibits to Plaintiff's affidavit dated November 17, 2009 (Docket No. 78):

Exhibit C (Geiger Aff., ¶10)—a document concerning the fringe benefits Plaintiff allegedly received as when he was an employee of Defendant Alstom;

Exhibit D (Geiger Aff., ¶10)—a copy of Plaintiff's September 27, 2002 earning statement (payroll stub) from Defendant Alstom;

Exhibit E (Geiger Aff., ¶10)—a "chart summarizing the Additional Benefits" that Plaintiff alleges should be included in the calculation of this regular monthly rate of pay under the Policy;

Exhibit F (Geiger Aff., ¶13)—a copy of an alleged Group Insurance Policy issued by Hartford Life and Accident Insurance Company (not Defendant Hartford) to the State of Minnesota—Department of Employee Relations;

Exhibit G (Geiger Aff., ¶14)—a copy of an alleged Group Insurance Policy issued by Hartford Life and Accident Insurance Company (not Defendant Hartford) to the Veterans Affairs Employees Association, Central Office, Inc.;

Exhibit H (Geiger Aff., ¶16)—a copy of an alleged letter from Defendant Alstom to Plaintiff, dated December 19, 2003;

Exhibit I (Geiger Aff., ¶21)—a copy of an alleged Long Term Disability Benefits Highlights document from Defendant Hartford and Defendant Alstom, concerning premium calculations and long term disability benefits;

Exhibit K (Geiger Aff., ¶22)—a copy of Plaintiff's alleged checking account statement for the period of January 1, 2004 through March 31, 2004.

(Hartford Mem. of Law (Docket No. 86) 3–4.) The Court grants Hartford's motion *in limine* for the reasons discussed in prior cases, cited above. Since, as discussed below, if the Court determines that the arbitrary and capricious standard of review applies with respect to Hartford's interpretations and decisions under the Policy, it will consider only those

documents that were before Hartford when it made its decision. Therefore, Hartford's motion *in limine* is granted.

### Hartford's Motion for Summary Judgment

The dispute between Plaintiff and Hartford concerns the manner in which Hartford calculated Plaintiff's monthly LTD benefit. Hartford contends that the Court must review its decisions under the arbitrary and capricious standard and, under that standard, Hartford is properly calculating his LTD benefit payments. Hartford asserts that ERISA applies and Plaintiff assumes, *arguendo*, that ERISA applies (Pl.'s Mem. of Law 6) to the Group Insurance Policy (Policy No. GLT-674028) issued by Hartford to ALSTOM ("Policy"). Thus, the Court will analyze the issue under ERISA standards.

The Policy lists ALSTOM as the Plan Administrator. (Policy 43.) However, the policy also contains this question and answer:

Who interprets policy terms and conditions?

We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

(Policy 15.) "We" is defined in the Policy as "the Hartford Life Insurance Company." (Policy 19.) The Southern District of New York commented on this apparent discrepancy in *Krauss v. Oxvofd Health Plans, Inc.*, 418 F. Supp. 2d 416 (2005). The court wrote:

An entity may "administer" some elements of a covered Plan as a fiduciary without being the plan administrator. ERISA's definition of "fiduciary" covers any entity who "exercises any discretionary authority...respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A) (2000).

*Id.* at 434. Therefore, the Court will treat Hartford as the fiduciary responsible for interpreting the Policy, and, in that regard, based upon the plain language of the policy quote above, the Court determines that the deferential, arbitrary and capricious standard of review applies.

Since Hartford is both the fiduciary responsible for interpreting the plan, and the insurance company whose funds are at risk in this situation, the Court must consider Hartford's conflict of interest. *Metropolitan Life Ins. Co. v. Glenn*, __ U.S. __, 128 S. Ct. 2343, 2349 (2008) ("The answer to the conflict question is less clear where (as here) the plan administrator is not the employer itself but rather a professional insurance company.") Therefore, the Court is cognizant that, although it must review Hartford's decisions under the deferential standard, it must, "at the same time…take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion." *Id.* at 2343.

Applying a discretionary reviewing standard, the Court determines that Plaintiff has failed to raise a material issue of fact precluding summary judgment, and that Hartford's decisions with regard to the Policy were not arbitrary and capricious. The Court has already addressed the issue Plaintiff raised concerning the lump sum payment and concluded that ALTSOM was entitled to summary judgment on that issue. Likewise, Hartford is also entitled to summary judgment on this point. Hartford was entitled to rely on ALSTOM's representation to it with regard to Plaintiff's regular compensation, which did not include the lump sum payment. Hartford's decision not to include the lump sum payment from

2002 into its calculation of the LTD benefit was not arbitrary or capricious.[5]

Plaintiff also argues that Hartford's calculation of his LTD benefit violates a New York State Department of Insurance regulation, codified at 11 N.Y.C.R.R. § 52.23(b) § 52.23(o)(1)(ii). Those regulations are contained in a section entitled, "PART 52. Minimum Standards for Form, Content and Sale of Health Insurance Including Standards of Full and Fair Disclosure." The specific provisions Plaintiff relies on are as follows:

> (b) A coordination of benefits (COB) provision is one that is intended to avoid claims payment delays and duplication of benefits when a person is covered by two or more plans providing benefits or services for medical, dental or other care or treatment. It avoids claims payment delays by establishing an order in which plans pay their claims and providing the authority for the orderly transfer of information needed to pay claims promptly. It avoids duplication of benefits by permitting a reduction of the benefits of a plan when, by the rules established by this section, it does not have to pay its benefits first....

> (o) Reduction in a plan's benefits when it is secondary.

> (1) A secondary plan may reduce its benefits in accordance with subparagraph (i), (ii) or (iii) of this paragraph, or any version thereof which is more favorable to a covered person:...

> (ii) a secondary plan may reduce its benefits so that the total benefits paid or provided by all plans during a claim determination period are not more than a stated percentage, but not less than 80 percent, of total allowable expenses. The amount by which the secondary plan's benefits have been reduced shall be used by the secondary plan to pay the stated percentage of allowable expenses, not otherwise paid, which were incurred during the claim determination period by the person for whom the claim is made. As each claim is submitted, the secondary plan determines its obligations to pay for the stated percentage of allowable expenses based on all claims which were submitted up to that point in time during the claim determination period....

---

[5]The Court also notes that Hartford obtained Plaintiff's application to the Social Security Administration in which he listed his weekly rate of pay at the same amount Hartford used to calculate his LTD benefit. (*See* Hartford Mem. of Law (Docket No. 75) 16.)

11 N.Y.C.R.R. § 52.23(b) and § 52.23(o)(1)(ii). Plaintiff's reliance on these regulations is misplaced. These regulations are designed to apply to health insurance policies. 11 N.Y.C.R.R. § 52.23(b) ("benefits or services for medical, dental or other care or treatment"). Further, the Second Circuit, and other district courts in this Circuit, have upheld Social Security offset provisions in long term disability policies. The Court rejects Plaintiff's argument that the offset provision in the Policy here violated the New York regulation.

## CONCLUSION

For the reasons stated above, ALSTOM's motion (Docket No. 55) is granted in part and denied in part. ALSTOM's calculation of Plaintiff's benefit under the Separation Pay Plan is accurate and ALSTOM is entitled to summary judgment on this claim, which is part of the second cause of action. In all other respects, ALSTOM's motion is denied. Plaintiff's claims that ALSTOM breached the contract and its fiduciary duty, both contained in the second cause of action, may go forward.

Hartford's motion *in limine* (Docket No. 84) is granted, and Hartford's motion (Docket No. 72) is also granted, thereby dismissing the first cause of action in the amended complaint. Consequently, Plaintiff's cross-motion (Docket No. 78) for summary judgment against Hartford is denied. The Clerk is directed to enter judgment for Hartford and terminate it as a party.

IT IS SO ORDERED.

Dated:   April 13, 2010
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa_____
CHARLES J. SIRAGUSA
United States District Judge